Elliot Gale (Bar #263326)
egale@gajplaw.com
Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Jaime Bryan Rodriguez Soto

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Jaime Bryan Rodriguez Soto<br><br>Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc.;<br>Bank of America, N.A.<br><br>Defendants. | CASE NO.  2:22-cv-01177<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act;<br>2. Violation of California Consumer Credit Reporting Agencies Act |

COMES NOW Plaintiff Jaime Bryan Rodriguez Soto (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

**INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b) and the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of various credit accounts that do not belong to Plaintiff but appear on her Experian credit report.

3. Experian is reporting that Plaintiff is associated with various derogatory unsecured credit accounts when those accounts do not actually belong to Plaintiff.

4. Bank of America, N.A. is reporting that Plaintiff is responsible for an account that he did not open and did not co-sign for in any capacity.

5. Despite disputing the inaccurate tradelines with Experian, Experian and Bank of America have filed to update and correct Plaintiff's credit report.

6. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

7. Plaintiff's credit score has been adversely impacted by the reporting.

8. Third parties have been exposed to the inaccurate reporting.

9. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

**JURISDICTION & VENUE**

10. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

11. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

12. The venue is proper pursuant to 28 U.S.C. §1391(b)(1).

13. Plaintiff resides in the Eastern District of California.

14. Experian maintains a physical location within the State of California.
15. Bank of America does business throughout the United States, including the State of California.

## GENERAL ALLEGATIONS

16. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for accurate credit reporting.
17. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

18. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.
19. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.
20. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.
21. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.
22. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

23. There are 28 FICO Scores that are commonly used by lenders.
24. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).
25. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.
26. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.
27. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.
28. Each of the five factors is weighted differently by FICO.
29. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
30. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.
31. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently they occurred, and how many delinquent accounts exist.
32. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

33. FICO Scores are entirely dependent upon information provided/furnished by data furnishers (DFs) to CRAs. In other words, a FICO score is generated when a consumer's credit information is transmitted from the CRAs to FICO.

34. A consumer's FICO score is negatively impacted when an adverse authorized user account is reported.

## Metro 2

35. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

36. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

37. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

38. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

39. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.

    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

40. The CDIA's Metro 2 is accepted by all CRAs.

41. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

42. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

43. The three main credit bureaus helped draft the CRRG.

44. The CRRG is not readily available to the public. It can be purchased online for $229.45.

45. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

46. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

47. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

48. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is

lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### Plaintiffs Credit Report

49. On November 8, 2021 Plaintiff ordered a credit report from Experian in order to review his credit score and verify that all accounts on his Experian repot were in fact his own.

50. On the November 8, 2021 Experian report, Plaintiff noticed Experian was listing various accounts that Plaintiff did not open or authorize to be opened on his behalf.

51. The Experian report listed the following accounts that Plaintiff did not open: Bank of America, N.A. and Verizon Wireless.

52. Plaintiff first learned of this inaccurate information in October of 2021.

53. Concerned, Plaintiff disputed the accounts that did not belong to him.

54. Plaintiff disputed the inaccurate account information with Experian in early December 2021.

55. Plaintiff's dispute letter made it clear that Plaintiff did not open any of the disputed accounts and informed Experian that he should not be associated with the Bank of America, N.A. and Verizon accounts. Plaintiff requested that the information be removed from his credit report because the accounts were not his account.

56. Plaintiff provided his identifying information to Experian so Experian could easily verify and untangle its mixed file.

57. Plaintiff is informed and believes that Experian received the dispute letter and forwarded his disputes to each of the various data furnishers via an ACDV.

58. On January 24, 2022, after the statutory time period had elapsed for Plaintiff to receive a reinvestigation report from Experian, Plaintiff ordered a second

credit report in order to verify that the disputed accounts and personal information was corrected.

59. Plaintiff expected that either the disputed data furnishers or Experian would remove/delete/block the accounts that did not belong to Plaintiff.

60. However, the January 24, 2022 Experian credit report still contained the inaccurate accounts that do not belong to Plaintiff.

**Inaccuracy – Bank of America**

61. Bank of America continues to report that Plaintiff is the borrower on an account that does not belong to him.

62. Plaintiff did not apply for or open the Bank of America account at issue.

63. Bank of America's reporting is inaccurate and misleading because it is transmitting information regarding an account that do not belong to Plaintiff.

64. The Bank of America accounts are adverse collection accounts that appear on Plaintiff's credit report, which impacts Plaintiff's credit score and harms his overall credit wellbeing.

**Damages**

65. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.

66. In addition, Plaintiff's credit score irreparably harmed and continues to be harmed by Bank of America's reporting as that reporting has been disclosed and disseminated to various third-party lenders. Until Bank of America's reporting has been properly updated Plaintiff continues to appear a severe credit risk and will continue to experience problems regarding obtaining credit.

67. Plaintiff has been unable to obtain reasonable interest rates related to the refinance of his vehicle due to the inaccurate information that appears on his credit report.

68. Plaintiff has been unable to qualify for various credit cards and has experienced significant issues when applying to various apartments because of his credit score – which is impacted by the inaccurate Bank of America account.

69. The actions of Experian and Bank of America, as alleged herein, are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

<b><u>FIRST CAUSE OF ACTION</u></b><br>
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))<br>
Against Defendants)

**Experian – Failure to Assure Credit Reporting Accuracy.**

70. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

71. Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

72. Had Experian maintained reasonable procedures to assure maximum accuracy Experian would never have allowed Bank of America to report the account as described herein.

73. As a result of Experian's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, denial of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

74. Experian allowed the inaccurate information reported by Bank of America and Verizon Wireless to be transmitted to at least nine third-party lenders, further damaging Plaintiff's credit.

75. The violations described herein by Experian were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

76. Instead of correcting Bank of America and Verizon's inaccurate reporting Experian allowed the inaccurate and misleading information to continue to be reported and disseminated to third parties.

77. Experian is also continuing to list and publish incorrect names and addresses for Plaintiff.

**Willfulness**

78. Consequently, Experian is liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n. In the alternative Experian was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

79. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

<u>**SECOND CAUSE OF ACTION**</u>
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against All Defendants)

**Bank of America – Failure to Reinvestigate.**

80. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

81. 15 USC §§1681s-2(b) and 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

82. Defendant Bank of America violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

83. The CRAs provided notice to Bank of America that Plaintiff was disputing the inaccurate and misleading information, but Bank of America failed to conduct a reasonable investigation of the information as required by the FCRA.

84. Based on Plaintiff's disputes, Bank of America should have known that its reporting was incomplete as Plaintiff's dispute letters highlighted the problems with the various tradelines.

85. The most basic investigation would simply involve reading Plaintiff's dispute letters.

86. Plaintiff alleges Bank of America did not review well established industry standards for credit reporting.

87. Moreover, had Bank of America Express done any investigation whatsoever it would have uncovered that the accounts do not belong to Plaintiff because he did not open or apply for the accounts.

88. The lack of investigation is unreasonable.

89. Plaintiff further alleges that Bank of America have not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Experian – Failure to Reinvestigate Disputed Information.**

90. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

91. After Plaintiff disputed the accounts mentioned above, Experian was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC § 1681i-(a)1.

92. Experian failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

93. Experian could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly explained that the Bank of America account did not belong to Plaintiff.

94. Plaintiff alleges that Experian has its own independent duty to conduct a reasonable investigation 15 USC § 1681i-(a)1.

95. Experian is not a passive entity bound to report whatever information a DF provides.

96. Given the aforementioned, Plaintiff alleges that Experian can and does suppress inaccurate information from being reported when DFs provide inaccurate information.

97. Experian can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

98. Experian failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.

99. Experian therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

100. Experian intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian's general policy is to simply parrot whatever information a data furnisher sends.

101. Such policies and procedures inherently lead to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

//
//

## THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants Experian)

**Experian – Failure to Review and Consider All Relevant Information.**

102. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

103. Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

104. As a result of Experian's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

105. The violations by Experian were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

106. In the alternative Experian was negligent, which entitle Plaintiff to recovery under 15 U.S.C. § 1681o.

107. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants Experian)

**Experian – Failure to Delete Disputed and Inaccurate Information.**

108. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

109. Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

110. As a result of Experian's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

111. The violations by Experian were willful, rendering Experian individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

112. In the alternative, Experian was negligent, which entitle Plaintiff to recovery under 15 U.S.C. § 1681o.

113. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## FIFTH CAUSE OF ACTION
(Violation of California Consumer Credit Reporting Agencies Act California Civil Code § 1785.25(a) Against Defendants)

**Bank of America – Reporting Inaccurate Information to TransUnion and Experian**

114. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

115. In the regular course of its business operations, Bank of America routinely furnishes information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

116. Bank of America intentionally and knowingly reported misleading and inaccurate account information to Experian Information Solutions, Inc. by falsifying account information and reporting that Plaintiff owed Bank of America money.  Plaintiff alleges that Bank of America re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

117. Plaintiff also alleges that Bank of America had reason to know that the information reported on Plaintiff's accounts were misleading, inaccurate, and incomplete.

118. Plaintiff alleges that Bank of America had reason to know that by reporting delinquent account information for an account that did not belong to the borrower that reporting would have an adverse and negative impact on the non-borrower's credit score.

119. Despite the CRAs own culpability Bank of America failed to notify Experian that the information it re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).

120. Bank of America's communications of false information and erroneous reporting were done knowingly, intentionally, and in reckless disregard of their duties and Plaintiff's rights.

121. As a direct and proximate result of Bank of America's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, diminished credit score, emotional distress, inability to obtain credit, frustration, and such further expenses in an amount to be determined at trial.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31;
3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;
5. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
6. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Gale, Angelo, Johnson, & Pruett, P.C.

Dated: February 22, 2022

*/s/ Joe Angelo*
Joe Angelo
Elliot Gale
Attorneys for Plaintiff